The second case on the docket is 3-19-0345, Claude v. Manley and Nolan v. Complaints of Accounts v. Dr. Bruce Laws and Higginsdale Township High School District, E6. Defendant's appellee, arguing on behalf of Complaints of Accounts, Bruce C. Davidson, arguing on behalf of Defendants' appellee, Mr. Bobbitt, back to you. Mr. Davidson, you may proceed. Good morning, Your Honor. May it please the Court? I'm Bruce Davidson, attorney for Complaints to Claudia and Nolan Manley. I requested oral argument in this case primarily to discuss the 2-260 or Uniform Grievance Procedure. Could you speak up a little louder, please? Certainly. Try anyway. Maybe if you pulled the microphone down just a bit. There you go. I think that would be a little easier. All right. Thank you. I wanted to discuss the, in other words, the applicability of this policy, whether it's authorized by statute for use or whether, in fact, the policy itself even contemplates being used in a situation like this. I want to focus on that issue because if it's resolved in our favor, then the rest of the issue is on appeal. What is the situation like this? Ms. Manley is a board member, albeit going to see her daughter in a play or some school activity, and notices this, and she claims that she is a community member, but yet she references her position on the board. So how does this not apply to her? I'm not sure that she references her position on the board. I'm not sure that that's a fact. I think there was some indications of that in the so-called Littman report, or what I might call the Littman dossier. But as far as the summary judgment record is concerned itself, I'm not sure that she identifies herself as a board member. There's some indication, again, I think this is in the Littman document, that she said something about that policy doesn't permit this activity on campus. And then somebody asked her, well, what policy exactly is that? And she said she thought she could find it maybe because she was a member of the board. Number one, if that's in the record, it's in this Littman report, which is not verified. It was not part of the summary judgment record. But this report exonerated her. So why would anybody not want that report part of this record, other than it called her mean-spirited and rude? Well, that's not a total exoneration, because it did find her in violation of policy. And furthermore, it's a section. Well, it found her to be a board member, didn't it? Because Littman had gone ahead with it. No, the complaints didn't allege that she was a board member, other than that they asked her to be kicked off the board. But it didn't say that she abused her power as a board member. None of the complaints said that. It said that she was rude. And as a consequence, we found out afterwards she was a board member, perhaps. Well, it wasn't her premise, though, initially. And that was a long time ago, so it's maybe a little difficult to pull here. But she could not be judged under this policy because she was simply a community member. And that policy only dealt with faculty, board, or there's a third one. It deals with the Board of Education itself, employees, or agents. Frankly, it doesn't...  She was on the Board of Education. She was not the Board of Education. But we believe, and it's our contention, that this grievance policy refers to the Board of Education as a policy-making entity, so that complaints can be brought against the Board of Education for violation of policy, or for policy that implements something in contravention to her rights, or the complainant's rights. So even if you acknowledge that all these allegations were because she identified herself as a board member, which we don't think is in the record, even if she did that, we still don't think the policy applies to complaints against board members, unless she's not an employee, unless they can pull this rabbit out of the hat and call her an agent. Well, the board is an entity, but it's made up of people. Under the statute, the Board of Education is seven members, yes. Correct. And how can... I mean, this court is made up of three judges, but we can all ask questions as members of this panel. And why are we not, then, therefore, members of this panel? I mean, I don't understand how... Well, I can take a look at you, where you're sitting, if you have robes on, and I can tell you you're judges. No, maybe not. A good judge is bad, but in any event, Mrs. Manley came into this thing, dressed in her... She was with her family. She was among dozens of people going into the same. There was nothing to single her out, nothing that would identify her as a Board of Education member. Did she not approach them? Did they approach her and say, you can't tell me that, or did she approach them? They were standing in front of the entrance, so that in order to enter the building, you had to approach them. She did not... She didn't go out of her way. They went off 50 yards to the side, and she didn't go over to them. She had to approach them in order to enter. What's the significance of saying something to the effect that I was elected to make comment, or I was elected to have the authority to tell you that what you're doing is wrong? Doesn't the word elected imply that she's acting within her authority as a member of the board or as an agent of the entire board? Well, a lot of things involve that. Number one, I'm not sure that it's a fact that's established in the record that she did say any of those things. Again, there may be something in the Lipman Report. Judge Hutchinson asked the question about, well, shouldn't we just accept the Lipman Report because it exonerates her? Well, number one, it doesn't exactly exonerate her. This thing is 16 pages long. It contains a lot of remarks, and not all of them are remarks that we appreciate or accept. So to say, well, shouldn't we just accept the report? Well, we should accept the conclusion perhaps that she didn't abuse her authority because he didn't make that finding. But we certainly don't accept everything that he said in the 16 pages. In fact, we don't accept the conclusion that she was rude, actually. You cite on page 21 of your brief, Hartford accident and indemnity versus mutual trucking. And you said the court held the judgment order is indefensible and must be reversed. Oh, right. That was entry of summary judgment where there had been no motion for summary judgment. Did anybody in that case file a motion for summary judgment? I believe so, and in fact, in this case, we filed a motion for partial summary judgment. So what happened in that case was identical to this case, which was the plaintiff filed a motion for summary judgment, and the defendant did not, and the appellate court reversed the judgment in favor of the defendant on the basis that there was no motion, no cross motion for summary judgment. I think there were third parties involved. It wasn't a simple motion, cross motion. There were third parties involved, and I think the motion for summary judgment that he entered where there was no motion might have been on one of the third party claims. But in any event, it's our contention that under the statute, you're not entitled to summary judgment unless you make a motion for summary judgment. So the fact that we made a motion for summary judgment. Did they make any motion or make any request for relief whatsoever? The defendants in this case? Yes. Yes, they moved to dismiss on the grounds that it was moved. They didn't make a motion for dismissal on the grounds that Judge Fullerton granted the motion. When a plaintiff files a motion for summary judgment, the law on the case or on the situation is that you're entitled, the plaintiff's entitled to summary judgment if, as a matter of law, no reasonable persons would disagree with the judgment being entered and that there are no material issues of fact. Well, I think the no reasonable person applies to the issues of fact. I don't think it's a requirement that no reasonable person would differ with your opinion about the law. I think if no reasonable person would question the facts, then you can make a determination of the law. The question of law would apply to the entirety of it, which is based upon the material facts that are uncontested or established, that the question of law is such that judgment should be entered in favor of the plaintiff. Yes, but I don't think that the answer to the question of law has to be extraordinarily clear. I think that as long as the facts are clear. There's also a requirement that if there's a cross-motion file, that the plaintiff has to establish that arguably there are sufficient facts in law to support a judgment in the plaintiff's favor. I think it's alternative either that the facts justify more than the law. Well, the phraseology is, is that the facts in the law arguably support the position. If the plaintiff can't establish that, then the motion for summary judgment on behalf of the defendant is granted. And I think the rationale behind it is because it's very difficult to prove a negative fact, whereas it's more easy for the plaintiff to arguably establish that they're entitled to a judgment. Two answers. Number one, I think that when you have cross-motions, when you view them differently, different arguments can arise. But more importantly here, that simply wasn't the situation. It wasn't a yes-no situation. We made a motion for partial summary judgment. We reserved issues of liability and responsibility on other claims. Judge Fullerton, even under these cases that they cite, he might have been justified, if they're good law, he might have been justified in entering partial summary judgment on one issue. But we don't see where he had any call to go to these other due process claims that we had. He seemed to be under the impression that we had some secret claims that we had not yet raised, and he wasn't going to allow us, if we lost this motion, to go on and reference us if we want to file an amended complaint, et cetera. And that's just not the case. We had something like ten pages of fairly detailed allegations concerning due process violations. Were they different from those that you had filed in federal court? Well, it was the amended complaint, and the amended complaint was filed before we went to federal court. So the litigation in federal court was on the same thing, yes. Okay. And those due process issues were covered in the trial court and in the appellate court on the federal level? Well, it's safe to say we have wildly different opinions on that. And first of all, let me emphasize that I don't think that issue is ready for resolution here. That should have been raised, if it's to be raised, in the trial court by a motion to enter judgment, a motion to dismiss. There should have been some way in the trial court to raise the issue. It wasn't litigated in the trial court. It wasn't argued in the trial court. Judge Fullerton made reference to the federal litigation in the footnote, but he didn't rule on summary judgment based on the federal litigation. He seemed to base it on his proposition that we hadn't disclosed all our claims. I mean, I don't remember his exact language, but he said that we hadn't specified them or something. Well, we have. We have them in the complaint. Now, as far as what the impact of the federal litigation was concerned, I think that's a pretty complex question. Number one, it supposedly concerns section 1983 claims. Well, nobody has tried to define what a 1983 claim in the context of this case was, except we made a little bit of an attempt to do that, because we pointed out that our complaint, in a kind of a side sentence, in a concluding paragraph, said we might, for example, seek damages under section 1983. Section 1983 is not the source of any substantive claim. It's a damage remedy. If you establish a claim some other way, you have a remedy under section 1983. It's not to say, and we point out, there may be Illinois statutes that provide for a remedy for constitutional violations. And incidentally, there is an entirely separate due process clause in the Constitution of Illinois. And in fact, the Illinois Supreme Court has noted, and we cited it somewhere along the line, has noted that the Illinois due process clause may have broader scope than the federal due process clause, particularly, we think, with respect to remedy. I really want to point out that there's nothing, when you read the federal appellate decision or the district court decision, nothing in there, for instance, about the right to cross-examine. Does any of those courts say we either had the right to cross-examine or that we got our right to cross-examine? No. They say that there isn't a federal remedy under section 1983. That's the extent of their ruling. What are you actually asking us to do, Mr. Davidson? I'm asking you to reverse the grant of summary judgment to the defendants. And I'm asking you to reverse the denial of summary judgment, the partial summary judgment to us. We think we have a very solid case on policy 2260. Let me point out that there's one provision in there that says the complaint manager shall assist the complainant in the prosecution of this, as needed in the prosecution of this complaint. Well, that's totally non-conducive to the resolution of a dispute if you're an independent complainant. So this procedure, this grievance procedure, is simply limited to, I've got a claim against you, I want a remedy from you, and the other guy says, well, I'll look into it and get back to you. This is not a policy that's conducive to the resolution of an adversarial dispute, which is what this was. These complainants never asked any relief from the district. They wanted her gone. It was a punitive action. They wanted her gone from the board. They didn't ask anything from the board. But she was not removed from the board, correct? Pardon me? She was never removed from the board. No, she wasn't. She just chose not to run when her term expired. Well, she wasn't even up for re-election at that point. At that point, but subsequently her term expired and she did not run. Right. But, again, to point out, all the complaints that were filed in the case sought either forced resignation or removal. The fact that it didn't turn out to be, I mean, it's partly because the security video showed that there wasn't, I mean, certainly our contention, the security video showed there was no substance to the complaint. So the fact that she wasn't removed really is, in our judgment and material, the question of whether the policy should have been invoked at all. I mean, here you have an administrative employee who's admitted in answer to the complaint that he has a bias against Claudia, and he's setting up a procedure by which he's going to investigate her. Wait a minute. And here we are five years later. This policy was not designed and brought into place for the purpose of investigating this complaint alone. This policy had been in existence. Oh, sure. It was designed for resolving grievances. Quickly and easily. And the student. But not exclusively. There's nothing in the policy, in fact, that's expressed that if the complainant isn't happy with it, they can pursue more formal relief even later or even concurrent with it. So it wasn't designed as an exclusive remedy. No, but potentially an expedient resolution of complaints. Of complaints against the district. Seeking relief from the district. Not against other people. In fact, there was that one issue involving this department where they did in fact concede that one community member can't seek relief from another. So now they're left with the argument that... When does your client stop just being a mom there to see her daughter in play? I'm sorry? At what point that evening did your client stop just being a mom there to see her daughter in a play? I think it was her daughter, right? Well, I guess it was at the point where she stepped forward and as a citizen said, I don't think you have the right to do this. How would a citizen know that? Mr. Manley said the same thing. He's not a member of the board. There's no complaints filed against him, but I don't think he... There's nothing in the record to support the proposition that she ever pulled out her board member. Does she have it? Her badge and clasped it around. She turned and it was it. Let me put it this way. If she's a mom, she's just going to the play. But she stops and encounters someone and tells them that they're in violation of a district policy. I've likened this to a case where suppose she'd come on the property and found some student with a can of spray paint headed towards a building and going to be vandalized. That would be a big assumption on her part. Pardon me? That would be a big assumption on her part. Perhaps he was going to do something else. Maybe he was going to art class. No, I mean, that's the example you used. Here they're handing... Suppose he's actually spray painting the building. Suppose he's actually engaged in the act of defacing the building. 911, call the police. The kid arrested. I mean, my point is this. She could have just walked into the school. But she took it upon herself to become involved. And she's aware of the policies, I'm guessing, because she's on the board and is well versed in all the policies. That would be part of her job. It's my contention. You don't have to be a board member to assert to someone in the act of doing something wrong an act of trespass. You don't have to be a board member to take an interest in that. I might. But she was a board member. I might walk in there and I say, you know, I know about the Hazelwood case. And I know about the board policy. Because board policy was enacted to prevent something, right? You usually have a policy because you have a problem. Okay? So I can come in and say, look, I know the law. And I know that the policy is designed to prevent this kind of activity. What the heck are you doing here? You should be out on the sidewalk. So am I now subject to that policy of being an agent of the board, attempting to enforce the board policy? Unless maybe I identify myself and start jumping in. I'm counsel for the board. I'm counsel for the board. They hire me to make opinions or to form opinions as to what does or doesn't qualify. I mean, it's the same. Well, your time is up. You will have a chance to respond. I'll second that motion. Mr. Lactari, is that how you pronounce it? It is, Your Honor. Thank you. And may it please the Court. I was elected to give my opinion, is what Mrs. Manley said to the leafletters. And how do we know that? According to whom? According to the leafletters. According to Mrs. Manley, as reported to the independent complaint manager, Dr. Litman, and stated in his report, which was offered into evidence by the plaintiffs, both in the summary judgment hearing in federal court, which they then adopted as their summary judgment record before the circuit court, as well as us at all stages of the proceeding, both the federal courts and the circuit court. And it's a black letter of law, Your Honors, that they didn't raise any objection to hearsay or any other evidentiary objection to any of the statements that they're now trying to disclaim at the appellate oral argument and in their reply brief before this Court. So is this the first time you have encountered this? Were you in the trial court? Yes. Is this the first time you've encountered this? Yes. Their objection? Yes. Yes. Their reply brief before this Court is the first and only time, other than counsel's statements here to you, that he doesn't appreciate or accept certain of the statements that his client made. When you offer a document into evidence before a court, you are offering the document to evidence, unless you make certain objections to hearsay or otherwise. That's black letter of law. The document was stipulated to you by the parties. So it's even more. Well, but when you just tender a document, I'm tendering. That's what the document says. That's not saying or agreeing that that's what I said. But I'll agree that that's what Dr. Litman wrote down. There's a difference. Your Honor, I submit that when a party moves to a summary of judgment on the basis of uncontested facts and represents to a tribunal that none of the facts are contested and the facts are as presented in the documents, which is what the plaintiffs wrote to the federal court and, again, to the circuit court, and one of the documents is the Litman report, and they do not make any objections to any hearsay or any other statements contained in that document. All of the information in that document is in evidence. And we submitted the document as well. Now, the fact that we're citing some statements that they dislike is too late in the game to try to make objections to those statements. It's too late in the game. What exactly did you submit insofar as the claim that there was no motion for summary judgment filed? What exactly was filed, or did you just argue that it should be denied and dismissed as prejudice? So we filed our own motion to dismiss the complaint in its entirety as moot, and in response to the plaintiff's motion for summary judgment, we filed a response in opposition to their motion for summary judgment. And in our response, we requested entry of judgment in our favor. So that's what we did. We requested entry of judgment in our favor in addition to the motion to dismiss that we filed. And the motion to dismiss was granted by Judge Fullerton as to Count 2. As to Count 1, Judge Fullerton found properly that there were no contested facts that Policy 2260 did apply to Mrs. Manley as a matter of law. And because it applied, and because the Board had the authority to create Policy 2260, and because it was a good application of the policy in these circumstances, there were no facts left to try on Count 1. And that result is fully supported by the Magnus case and the West Suburban Bank cases, which we cite in our brief, which established that there's no limitation on the trial court's discretion in terms of entering judgment for a party where there are no contested facts and where the moving party loses as a matter of law, which is what occurred in this case. So by submitting or stipulating to that report, the Litman report, are you saying that she gave up her claim that or even participating in it, that she gave up her claim that she was just a community member going to the plate? No, Judge, not at all. I'm merely pointing out those facts to illustrate the point that she initiated this altercation. She was a Board member at the time. She was also the Chairman of the Board Policy Committee. And on that basis, she approached these leafleters and contested their ability to be there. She told them that maybe it would be better on page 188 of the record. It might be good for them to leave, 189. It would be better if you had said no to being here. Throughout the plaintiff's complaint, they referred to these leafleters as trespassers. They compared them to vandals. Their position is basically that they had no legal right to be present on the property, and that implies that Mrs. Manley was somehow justified in being rude or discourteous or mean-spirited to them. Were there any other parents that stopped and said to these people, these three adults and, I guess, one student, you shouldn't be doing this here? No. At least the record doesn't just— Or Mr. Manley was there. I don't know that he said anything, but no other parents to our knowledge. According to the Litman report, Mr. Manley joined in Mrs. Manley's confrontation, but no other parents were part of this encounter. So they were the only people there who took it upon themselves to challenge the leafleters' right to do what they were doing, didn't call the school principal who was there, didn't call the superintendent, Dr. Law, didn't notify the police. To Your Honor's question, Justice Jorgensen, if they're not legally able to be there, if they're trespassers, you call the police. If you think they're going to vandalize the property, call the police. Call the school administrator. That's exactly the point of what the letter to Mrs. Manley indicated. You overstepped your bounds. And when school board members take their office, their oath of office is actually set out in a provision of the school code. It sets out their oath in full. It's Article 10, Section 16-5 of the school code. And part of that oath of office says, I acknowledge that as a school board member I have no legal authority as an individual. They have to say that under oath when they take the office. Mrs. Manley violated that office, that oath. She overstepped her bounds, and that was the entire gist, or at least one of the claims made by the complainants. Okay, let me ask you this. Say she's not on the board. She goes up and she is all over these people. What remedy? If she has no affiliation with the board? She's a mom. She's there to watch her kid in the play. Okay, perhaps. No harm, no foul? That's okay? If she has no affiliation with the board, the board policy on grievances, 260, talks about employees, agents. I know that. Yeah. Answer the question. Under the policy, if she's not an employee or an agent or a board member, then the policy would not be enforced. So the only reason that this applies to her is because she is a board member or because of what the statement that you attribute to her? It's for two reasons. Because she is a board member, as well as holds the particular office of the policy chairman, which she invokes as part of her knowledge of how the policy 420 should have been, in her opinion, applied, as well as her effort to take upon herself to prevent the leafleters from being there, which should have been, if she had a legitimate concern about that, should have been the job of the school principal or the police or some other school administrator to handle. Because board members don't have any – their office does not extend beyond making votes at properly noticed and called school board meetings. They have no other duties and no other authority beyond that limited scope. And that's exactly what Judge Sheen said in the TRO ruling. And that was actually a finding that the plaintiffs never appealed and therefore procedurally cannot even raise this argument before this Court at this point, having failed to appeal the substantive finding that Judge Sheen made in the course of denying the TRO five – nearly five years ago, which is the holding in the Strata marketing case as well as the Bradford cases that we cite in our brief. What are your – what are your – Your Honor, counsel can't reserve issues unilaterally. He can't just say, well, I haven't pled these claims, but I plan to later. By the way, he also says that if – he told the trial court, if the issues that are pled are resolved against us, they're dispositive.  But you can't just say I reserve claims. He already litigated those claims. He lost in the federal court. That took three years. The federal district court denied the due process claims. The Seventh Circuit appealed. He lost on those claims already. What are we reserving? But anyway, he never filed a motion for relief to amend his complaint. He certainly never amended his complaint. You know, litigation has got to end at some point. This is a five-year-old case. You know, by the time the ruling came up before Judge Fullerton, it had been nearly four years since the case was filed. What's he reserving? These cases were already litigated anyway. The federal courts were very clear. They walked through every conceivable theory that the plaintiffs threw at them about the due process violations that were alleged and rejected all of them. Based on the federal constitution. Yes, but the federal constitution in terms of free speech is very similar to the Illinois constitution. Is that enough? Very similar, close enough? It is because if you litigate a case and you lose, that judgment is conclusive as to all the claims that could have been raised. And if he's trying to raise. . . But an Illinois constitutional claim was properly heard in the state court, not the federal court. The federal courts can hear an Illinois constitutional claim. Can, but not necessarily. But they didn't raise it in the federal court. And they could have and they should have because Res Judicata says that under judicial expediency, you have to raise all the claims that are part of the core operative facts. So if you have a claim on the Illinois constitution based on the exact same set of facts which you just conceded they would be, same complaint you said, then you've got to raise them. You don't get two, three, four bites at the apple. That's Res Judicata. So there is no basis to now say, well, I was also planning on amending my complaint to plead claims later. But he only asked for a partial summary judgment. He wasn't asking for the total judgment. Didn't that give you a, like a yellow light that there might be something else out there that you should have addressed? No, because we just litigated all the. . . We were on remand from the federal court where we, from 2015 to 2018, we litigated at summary judgment and then on appeal all of his due process claims. He had already lost them, his due process claims. What he said he wanted to reserve were some. . . He didn't even say what they were. More due process claims, perhaps based on the Illinois constitution, other constitution, I don't know. He never amended his complaint. He never filed a motion for leave to amend his complaint. Had he done that, we would have said, judge, this is futile. It should be. . . The motion for leave should be denied based on futility. When you argued on the motion for summary judgment, did you raise either race judicata or collateral estoppel or estoppel by judgment? In our response, in opposition to his motion for summary judgment, we did, Your Honor. We did. We. . . In fairness, we alluded to it. I don't know that we set out a very comprehensive. . . You're saying you alluded to it orally? No. It's in the response to, in opposition to the motion for summary judgment. It is in there. But it wasn't properly presented to the trial court. And the trial court has got to have the discretion to manage its docket and bring litigation to an end. And in these circumstances, there was nothing like anything resembling a need to prolong the proceedings, after all the past history, given the lack of even a request for leave to amend. It just wasn't there. So. . . When would that request for leave to amend have been filed? On remand from the federal court or sometime before these series of motions were heard? Certainly, it could have and should have been filed. If the intent was to raise them later, it should have been filed at the earliest opportunity. So after remand from the federal court would have been the opportunity to file them. It should have been the opportunity to file them. He filed a motion for leave to reinstate the case and then just immediately filed his motion for summary judgment that essentially, not even essentially, did adopt the entire federal summary judgment record and statement of facts. So there was no intent to present anything new to the circuit court in terms of summary judgment or pleadings that had already been presented. It was the same pleadings and the same evidence. So if counsel knew that he was going to attempt to amend his pleading, why present the court with, immediately, with his motion for summary judgment? That implies to everyone that this is his pleading. He intends to proceed and believes he's entitled to summary judgment. I just want to clear this. So your position is if a plaintiff files a motion for summary judgment, they're basically waiving any opportunity to amend their complaint in the future. Is that your position? I don't know that I'm taking that. If I can finish the thought. Sure. I would state it that broadly. Certainly, it's going to be a case-by-case determination. I'm just saying in the circumstances of this case, by the time he files after remand from the federal court, we're three years into the litigation. He's had every opportunity. You know, discovery had been afforded to everyone in the federal court. He never made any attempt for more discovery at the circuit court after remand. He simply moved, immediately moved for summary judgment. On one count? The only counts that were in his complaint. There was a two-count complaint. He moved for summary. He called it a partial summary judgment. Right, on count. So he was asking for it on count one, right? No. Both counts, Connor. What part was left out, then? I think this is what's misleading. It was styled as a motion for partial summary judgment. But in actuality, his motion sought summary judgment on the only two counts that were pled in his amendment complaint. The idea of partial referred to things he wanted to plead later. Perhaps. We don't know. That was what was partial about it. But certainly his motion requested relief on the full complaint that was before the court. And the court ruled on everything that was before it. Thank you. Your time is up. Thank you, Your Honor. Mr. Davidson, you may proceed. Let me just say, we did not make a motion to file an amendment complaint. We have no interest now in filing a motion for leave to file an amendment complaint. We rest on the due process to allegate the facts and allegations in the existing complaint. Again, none of those contentions have been ruled on on the merits. There was a procedural ruling that one particular remedy that we'd asked for didn't apply. And I was pulling out the five-year-old case card. I regret that. Is his characterization of partial summary judgment correct to the extent that your motion was seeking relief on the pleadings that were presently filed at that time? It was seeking relief on part of the pleadings that were unfiled. In other words, there were some liability issues on which we sought summary judgment, and there were some liability issues presented in the complaint that we did not present for summary judgment because we thought the interest of expediting the case, the 2260 issue, would resolve the case. If the whole procedure was wrong and shouldn't have been invoked, then the fact that there were due process violations along the line kind of dropped out. There's no need to present those later. But, we said, if you find that 2260 was properly invoked, we've got a lot of complaints about how it was administered. It didn't allow us to participate. It didn't allow us to cross-examine witnesses. It didn't allow us to put in a hearing officer that was your friend. We had a lot of complaints about the way the process went. They're in the complaint. There's nothing secret about it. They're in the complaint. That always happens since before the case went to federal court. Ultimately, what remedy were you seeking? The ultimate remedy that we sought was that the school district had no business investigating. I mean, there's a process administered by the administrative employees. What remedy were you asking for? A statement from the school district saying this does not apply to this plaintiff or this does not apply to board members acting independently? What were you seeking? We sought first injunctive relief. We didn't get that, so we asked for declaratory relief. When you asked for the summary judgment, you were asking for what relief? We were asking for finding a liability. We also reserved issues on remedy. We were looking for a liability. I mean, frankly, it was our position that these people are so justified. If the court said, no, you were wrong in invoking this policy, then we felt we could probably work out a remedy. I mean, the big thing we wanted was for the Litman report to be withdrawn, for the June 2015 letter to be withdrawn, and for the complaints basically to be dismissed on the grounds that there was no procedure to resolve them. We were opposed to the proposition that this employee, who admitted he had some bias against the plaintiff, from instituting a procedure by which he could investigate her. Conceivably, even, he couldn't remove her from the board, but he could process a complaint to the regional board superintendent who could remove her. So we felt that her position on the board was in jeopardy. That was the complaint. That was what the complaints asked for. So could I try and decipher what it is that you've been relating? You said you were seeking liability, which seems to me, from what I've gleaned, is that the board didn't have the authority to inquire into and ultimately claim that your client was rude. And that is based upon your argument that she is not an agent of the school district. Right. This is an investigation of a political figure by administrative employees  Whether she was a political figure or not, I don't know that that nomenclature was in any section of any policy. Your argument, I thought, was that she wasn't an agent. She didn't fit within the policy structures. And you said the board members aren't because it's a board. And then you also said that Anne, she's not an agent. Right. But their argument now is that she's only an agent if she is a political figure. She's only an agent if she's an elected board member. I think if she represents that she's an elected board member. No, I thought it was... Well, no, you're right. You're right. He did say that. You're right. I take it back. Before I have to sit down, I do want to talk about this Littman report. He says it's in the record and we stipulated to it. The factual record is established by an affidavit that's at C652 to 750. I frankly don't recall the Littman report being in there, but it certainly was not attested to, stipulated to, or any of those things. If it's in there, it's in there for the purpose of just showing that there was a report that was filed. And there was no cross affidavits of any sort filed by Littman. You're saying that because there was no stipulation, it shouldn't be considered? Well, it should be considered for the proposition that there was a report, but it shouldn't be considered for the truth of the statement. You mean as substantive evidence? Pardon? As substantive evidence? Right. It shouldn't be accepted for the truth of the statements in there. We didn't offer it into evidence at any point, except possibly. And I can't remember if there's a hundred pages of affidavit. We may have put it in for the proposition that it existed, but we certainly never signed an affidavit saying that everything the Littman report says is true and we want the court to consider it. Quite to the contrary. We say it was prepared in contravention of our due process rights. But you didn't sign anything or you didn't present anything that it wasn't part of your motion for partial summary judgment and you didn't accept the findings that were made there? Or you accepted the fact that she wasn't found responsible or she was not charged with violating, but you won't accept any of the other statements? To be honest, I don't even recall that the report is in that affidavit. It may be, but we do not attest to the truth of it, nor did they. They submitted nothing. If it's in the record, that affidavit, if it's in there, it's in there solely for the proposition that it existed. And what citation of authority do you have for that proposition?  Well, I passed the bar in 69, and when people filed motions for summary judgment after I became a judge in 81, I don't recall any authority that says that when a motion for summary judgment and exhibits are attached that there is any qualification other than this has been admitted to evidence and it can be taken notice of whatever the weight I want to, as a judge, give to the contents of the documentation. Because if supposedly there are limitations, how am I supposed to know? Well, I think it's in the record for the fact that it exists. If we put it in the record, you'd have to take a look at the underpages. I don't recall that we put it in. But if we did, put it in for that proposition. That was what was argued in our briefs. There's nothing in the affidavit that says this report was true. In fact, I think the record will show that we allege it was prepared in violation of our due process rights, and we don't agree with all of it. And I think I addressed Judge Hutchinson on that point earlier, that while it may appear to exonerate or to some extent doesn't mean we agree with all of it. Any other questions? Thank you. You've been very kind in your argument. Thank you very much. We will have other cases on the call. We will take a short recess.